**RODGERS, Appellant,**

v.

**RODGERS; Dixon, Sheriff, Appellee.**

[Cite as *Rodgers v. Rodgers* (1991), 74 Ohio App.3d 580.]

Court of Appeals of Ohio,
Pike County.

No. 451.

Decided June 17, 1991.

*Linda I. Sutton,* for appellant.

*Randall L. Lambert,* for appellee.

GREY, Judge.

This is an appeal from a judgment entered by the Pike County Court of Common Pleas overruling the motion of Mary Jane Rodgers, plaintiff-appellant, to amerce Pike County Sheriff James Dixon, defendant-appellee, pursuant to R.C. 2707.01.

Appellant assigns the following errors.

### Assignment of Error No. I

"The Pike County Common Pleas Court decision denying appellant's motion to amerce was against the manifest weight of the evidence."

### Assignment of Error No. II

"The Pike County Common Pleas Court decision denying appellant's motion to amerce was incorrect as a matter of law."

On May 8, 1987, a divorce judgment was entered in which appellant was awarded $6,350 from defendant Kenneth Rodgers as her portion of the division of marital property. Based upon that judgment, Mary Jane Rodgers filed a praecipe requesting the issuance of a writ of execution on an International semi-tractor and a Fruehauf van trailer owned by Kenneth Rodgers. Appellee, former Sheriff Dixon, received the writ of execution and on August 31, 1987, he removed the license plates from Kenneth Rodger's semi-tractor, advising a third party not to move the vehicle. Dixon notified Kenneth Rodgers of his right to claim exemptions and his opportunity to have a hearing on that issue. On September 3, 1987, Kenneth Rodgers filed an application which stated that he had reason to believe that one or more of the items seized by appellee were exempt from execution and sale and he requested a hearing. On the same date, Dixon released the license plates to the semi-tractor to Kenneth Rodgers and advised him not to take the personal property described in the writ of execution outside Ohio.

Subsequently, Dixon returned the writ unexecuted. On October 30, 1987, an *alias* writ of execution on the same property was issued to Dixon. On November 4, 1987, Kenneth Rodgers filed a voluntary bankruptcy petition. Dixon subsequently returned the *alias* writ unexecuted.

On December 17, 1987, Mrs. Rodgers commenced the instant action by filing a motion to amerce Dixon for the $6,350 judgment upon which he allegedly failed to execute. The trial court entered judgment dismissing Rodgers's amercement motion pursuant to Civ.R. 41. On appeal from that judgment, this court reversed the dismissal on the basis that Mrs. Rodgers had established a prima facie case for amercement sufficient to prevent dismissal, and remanded the case to the court below. *Rodgers v. Rodgers* (July 25, 1989), Pike App. No. 420, unreported, 1989 WL 86268. In so holding, this court noted that a party opposing an amercement motion could present a defense negating the existence of injury, bad faith, and lack of a return in an effort to convince the court that the case does not fall within the spirit of the amercement statute. *Id.* at 4–5.

Upon remand, a hearing was held, at which time Dixon testified that he did not believe he could legally proceed with the advertisement and sale of the semi-tractor and van trailer until the trial court had ruled upon the claimed exemption. In response to an inquiry by the lower court as to the procedure requiring a person to be notified of his or her right to claim exemptions and request a hearing, appellant's counsel cited *Clay v. Fisher* (S.D.Ohio 1984), 584 F.Supp. 730. On February 2, 1990, the trial court entered a judgment overruling Mrs. Rodgers's motion to amerce Dixon, stating that it could not say that Dixon acted unreasonably in failing to execute the writ under all the circumstances.

Mrs. Rodgers's first assignment of error asserts that the trial court's decision overruling her motion to amerce was against the manifest weight of the evidence. She argues that Dixon neglected or refused to execute the writ by not executing a valid levy, that he did not prove a good faith basis for his failure to act, and he did not prove that Mrs. Rodgers was not injured. Rather, Dixon asserts that since Mrs. Rodgers would not have recovered any proceeds from the sale of the attached property had he carried out the writ of execution, thereby suffering no damage, the lack of injury is a sufficient defense to a statutory amercement action.

Such a defense has long since been rejected by the Ohio Supreme Court. In *Moore v. McClief* (1864), 16 Ohio St. 51, the Montgomery County Sheriff neglected to "return" an execution to a judgment creditor within the statutory time frame and such creditor brought an amercement action against the sheriff. The court rejected the sheriff's argument that the debtor had been

insolvent since the day judgment was rendered and, therefore, the creditor still would have received nothing even if the writ had been properly returned. *Id.* at 53. The court held that fact to be irrelevant and stated that when a party makes a "clear case" for amercement under the statute, there can be no defense that the claimant has not suffered damages. *Id.* It was also noted that the amercement statute provides a summary remedy without regard to the amount of damages incurred. *Id.* at 53–54.

This principle is equally controlling in the cause here. It is highly unlikely that Mary Jane Rodgers would have recovered anything from a judicial sale of the truck and trailer after execution costs, face value of priority liens and the debtor's statutory exemptions were deducted from the sale proceeds. However, in light of the holding in *Moore,* that factor is irrelevant in an R.C. 2707.01 amercement action.

Perhaps some of the confusion stemming from this "damages" issue arises from the fact that neither party below has sufficiently distinguished the two separate actions which may be brought on account of a sheriff's nonfeasance in executing a writ. On the one hand, a claimant may bring a statutory amercement action under R.C. Chapter 2707. In Ohio, the amercement statute is penal in nature. *Langdon v. Summer's Admr.* (1859), 10 Ohio St. 77, paragraph two of the syllabus. As such, the penalty is meant to remedy "official delinquency" rather than restore the status quo of the injured party. *Moore, supra,* 16 Ohio St. at 53–54. The same is true with respect to the majority of jurisdictions nationwide with similar amercement statutes. See, generally, 70 American Jurisprudence 2d (1987) 400, Sheriffs, Police and Constables, Section 234.

On the other hand, a party injured by a sheriff's nonfeasance may also bring an entirely separate and distinct action at common law in order to recover damages. 75 Ohio Jurisprudence 3d (1987) 499–500 and 506, Police, Sheriffs and Related Officers, Sections 89 and 95; see, also, 70 American Jurisprudence 2d, *supra,* at 397, to the effect that a separate common-law action for damages also exists nationwide. In a common-law action, the absence of any equity of the judgment debtor in property against which a sheriff wrongfully refused to execute may be considered as a defense to either reduce damages to a nominal level or to absolve liability altogether. See *Coopers & Clark v. Wolf* (1864), 15 Ohio St. 523, paragraph three of the syllabus; 70 American Jurisprudence 2d, *supra,* at 358 (nationally).

As stated previously, the absence of any injury to the amercement claimant is irrelevant when imposing such penalty on a sheriff. Thus, no consideration need be given to whether Mary Jane Rodgers suffered injury and judgment should be entered in her favor as a matter of law.

■ An amercement remedy should not be given in a case which falls outside the letter and the spirit of the statute. See *Conkling v. Parker* (1859), 10 Ohio St. 28, paragraph three of the syllabus. However, the Supreme Court has given us no guidance on how to apply such a nebulous standard. In any event, we would be reluctant to hold that the absence of damage will take a case outside the spirit and letter of the statute when the Supreme Court has already rejected that argument as a defense to amercement. *Moore, supra,* 16 Ohio St. at 53.

■ Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

As discussed above, the trial court's decision was not supported by competent credible evidence. The trial court erred in holding as it did. Mary Jane Rodgers's first assignment of error is well taken and is sustained.

■ Mary Jane Rodgers's second assignment of error asserts that the trial court's decision was incorrect as a matter of law. She contends that the trial court improperly relied upon *Clay v. Fisher* (S.D.Ohio 1984) 584 F.Supp. 730, a federal district court case which held that Ohio's statutory provisions relating to execution, *i.e.,* R.C. Chapters 1917 and 2329, were unconstitutional in that they failed to provide adequate notice of a right to claim an exemption and a prompt hearing.

From reading the trial court's February 2, 1990 entry in its entirety, it does appear that the *Clay* holding was relied upon in its ultimate determination. Mary Jane Rodgers asserts that while *Clay* might be considered to be an accurate depiction of Ohio law, it is inapposite to the case at bar since Mr. Rodgers *was* provided adequate notice of a right to claim an exemption and a prompt hearing. The trial court erred as a matter of law in relying on *Clay* in light of the hearing afforded Mr. Rodgers below. Rodgers's second assignment of error is well taken and is sustained.

Mary Jane Rodgers has made a clear case in amercement and judgment should be entered in her favor as a matter of law. The judgment of the trial court is reversed and this cause is remanded with orders to the trial court to enter judgment in Mary Jane Rodgers's favor.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, P.J., concurs.

HARSHA, J., dissents.

HARSHA, Judge, dissenting.

I respectfully dissent from the judgment and opinion sustaining appellant's assignments of error and reversing the judgment entered by the court below which overruled appellant's motion for amercement pursuant to R.C. 2707.01. Appellant's first assignment of error asserts that the judgment of the trial court overruling her motion to amerce Sheriff Dixon was against the manifest weight of the evidence.

As noted in the majority opinion, an appellate court will not reverse the judgment of a lower court as being against the manifest weight of the evidence where that court's judgment is supported by some competent, credible evidence going to all the essential elements of the case. *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 158. Furthermore, it should be emphasized that a reviewing court should be guided by the presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use their observations in weighing the credibility of the proffered testimony. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184.

In sustaining appellant's first assignment of error, the majority opinion engages in a lengthy discussion which essentially holds that lack of injury to a judgment creditor engendered by an officer's failure to carry out a writ of execution does not constitute a defense to an R.C. 2707.01 amercement action. Initially, it should be noted that in this court's prior opinion in this matter, in which the undersigned did not participate, it was explicitly stated that "[t]he party opposing the motin [*sic*] to amerce *may*, however, *present a defense negating the existence of injury*, bad faith, and lack of return in an effort to convince the court the case does not fall within the spirit of the amercement statute." (Emphasis added.) *Rodgers v. Rodgers* (July 25, 1989), Pike App. No. 420, unreported, at 4–5, 1989 WL 86268. By misadvising the trial court that lack of injury might be relevant to proving an amercement defense, we placed that court in a confusing and difficult position. By now holding that lack of injury is not an appropriate defense pursuant to R.C. 2707.01 and *Moore v. McClief* (1864), 16 Ohio St. 51, we have effectively overruled the language in our prior opinion without explicitly stating so.

Secondly, it should be noted that Ohio's amercement statute appears to be strictly drafted in that it requires that an officer liable in amercement "shall be amerced in the amount of the judgment * * *." R.C. 2707.01. Conversely, other jurisdictions have statutorily limited recovery in amercement actions to "the amount of * * * loss and damage to and for the use of the judgment

creditor." See, *e.g., Vitale v. Hotel California, Inc.* (1982), 184 N.J.Super. 512, 446 A.2d 880. Modern jurisprudence, progressive concepts of equity, causation, and damages all support the latter amercement rationale in limiting recovery of damages to those losses which, but for the officer's misfeasance or nonfeasance, would not have been suffered by the judgment creditor. To hold otherwise results in an unnecessary windfall to the judgment creditor, notwithstanding the penal nature of the statute. However, given the holding in *Moore, supra,* as well as the explicit language of R.C. 2707.01, I agree that absent legislative amendment of the "amount of judgment" language of R.C. 2707.01, or a contrary holding by the Ohio Supreme Court, lack of injury will not constitute a viable defense to an amercement action in Ohio.

Nevertheless, although the majority opinion inexplicably limits its reversal to a discussion of the "lack of injury" defense, a review of the record in the case at bar indicates that the trial court's February 2, 1990 judgment entry was not solely premised upon an erroneous reliance on that defense. Indeed, the trial court stated as follows in its February 2, 1990 judgment:

"In this case, for whatever reason, there was no exemption hearing held. The only hearing was held on October 30, 1987, which was well past the 60 days in which the sheriff had to return the writ of execution. ORC 2329.53. Though he probably should not have returned possession to Rodgers without requiring some sort of bond (ORC 2329.12), given all the circumstances, the sheriff's confusion about the procedure to follow is understandable.

"Based upon the foregoing, this court cannot say that the sheriff acted unreasonably under all the circumstances. Therefore, plaintiff's motion for amercement is denied."

The trial court therefore relied upon a good faith defense in overruling appellant's amercement action. Again, it should be recognized that in this court's prior opinion, *Rodgers, supra,* it was stated that a party opposing an amercement action may present a defense negating the existence of injury, bad faith, and lack of a return to persuade the lower court that the case does not fall within the spirit of the amercement statute, citing two Ohio Supreme Court cases for this proposition. However, neither of the cases cited in our prior opinion specified these as elements necessary to prove a defense to amercement. In fact, only the nonbinding decision of the Tuscarawas County Court of Common Pleas in *Mine Safety Appliances Co. v. Best* (C.P.1947), 36 O.O. 361, 49 Ohio Law Abs. 552, 76 N.E.2d 108, has held this to constitute a defense to amercement. Even that court did not hold that satisfaction of all three of those elements was the *only* way to present a viable defense to an amercement action. Consequently, I am not persuaded that a good faith defense is precluded in the context of statutory amercement actions, particularly in light of the Ohio Supreme Court's rather nebulous requirement that

such action must come within the "spirit" as well as the "letter" of the amercement statute. Sheriff Dixon explicitly relies upon the argument that he "substantially complied with his duties and he acted in a manner consistent with good faith."

In short, unlike the lack of injury defense, I am persuaded that neither *Moore, supra,* nor R.C. 2707.01 precludes a good faith defense to an amercement action where the uncontroverted evidence indicated that the officer's failure to retain property and proceed with other aspects of execution, *i.e.,* sale and distribution of proceeds, was based upon his understanding that he could not proceed with execution until the request for exemption hearing had been held and the debtor's exemption claims resolved. Considering the apparent vagaries of the law concerning such issue and in further light of such cases such as *Clay, supra,* which notes that the risk of harm from erroneous deprivation of a person's automobile and tools of trade, *i.e.,* the partial exemptions, may be substantial, the trial court did not err in determining that Sheriff Dixon's good faith belief took him outside the "spirit" of the R.C. 2707.01 amercement statute. Based on the foregoing, appellant's first assignment of error should be overruled.

Appellant's second assignment of error relates to the alleged improper reliance on *Clay, supra.* Since I am persuaded, pursuant to my disposition of appellant's first assignment of error, that the judgment of the trial court was fully supported by the applicable law and uncontroverted evidence establishing a viable good faith defense, any error by the trial court concerning *Clay, supra,* was harmless. For the foregoing reasons, appellant's assignments of error should be overruled, and the judgment of the trial court affirmed.